(No. 5586)

DOYLE McRAVEN, Administrator of the Estate of LOUIS WAYNE McRAVEN, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 14, 1972.*

FEIRICH, FEIRICH AND GREEN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

Claimant, as administrator of the estate of Louis Wayne McRaven, deceased, brings this action for damages for the wrongful death of the decedent and alleges that his death was caused by the negligent operation of an Illinois National Guard truck when it struck an automobile which decedent was driving.

Claimant contends that the driver of the National Guard truck was an agent of the State of Illinois at the time of the accident. This, of course, is an essential allegation to establish jurisdiction in this Court under §8(d) of the "Court of Claims Act". It is incumbent upon us to determine the question of jurisdiction before considering any other issue.

There is no controversy as to the facts in this matter, and we briefly restate them as follows. The driver of the National Guard truck involved in the accident was Private Kenneth E. Keleher, a member of the Illinois Army National Guard assigned to the 3rd Rifle Platoon, Company A, 2nd Battalion, 129th Infantry stationed at Freeport, Illinois. The headquarters of the battalion was located at Sycamore, Illinois. On June 10 and 11, 1967, Private Kenneth E. Keleher was in attendance at the regularly scheduled multiple unit training assemblies of his Illinois Army National Guard unit. As a part of his duties in connection with these training assemblies, Private Keleher was assigned to operate government vehicle 2½ ton truck M-135, USA 41108473. This was the truck involved in the accident.

On June 10, 1967, Private Keleher was directed to pick up troops of Company A, 2nd Battalion, 129th Infantry at the Armory in Elgin, Illinois, and take them to the Joliet training area. Upon completion of this mission, he was then sent to the Joliet Armory to bring a 1½ ton water trailer back to the Joliet training area. Private Keleher remained in the Battalion Motor Pool until 2:30 p.m. At that time he was dispatched to a Standard service station on Illinois Route 6

and U.S. Route 66 for the purpose of obtaining gasoline. Upon return from the service station, Private Keleher completed delivery of certain items of baggage to Company A in the Joliet training area. Apparently having missed the regular evening meal served by his unit due to his absence on assigned duties, Private Keleher returned to the Standard service station, where he had earlier bought gasoline, to eat at the restaurant there. He remained at the restaurant from 7:30 p.m. until 8:45 p.m. and then returned to the Joliet training area.

Some time after returning to the training area, Private Keleher picked up a Private Robert C. Diehl, and the two of them left the training area in the government vehicle which Private Keleher had been using earlier that day. They drove to the Four Palms Tavern located on Route 53, arriving there at approximately 10:00 p.m. About 11:30 p.m. they were joined at the tavern by a Sergeant Gary E. Dietmeier and a Specialist Four Gary L. Derrer. At approximately 2:45 a.m. on June 11, 1967, these four men left the parking lot of the Four Palms Tavern in the same government vehicle, with Private Keleher driving. The fatal accident occurred a moment later.

At this time claimant's decedent was driving a 1957 Chevrolet in a northerly direction on Route 53 approaching the point of impact which was 3¾ miles south of Joliet and adjacent to the Joliet arsenal area. At this point Route 53 is a four lane divided highway with no traffic signals. At the time of the accident, the weather was clear and dry. The truck driven by Private Keleher left the parking lot and turned south into the northbound lanes. The left front of decedent's car and the left front of the government truck collided. Claimant's decedent was thrown from his car into the path of a northbound pick-up truck driven by Brian J. Hrpcha. Claimant's decedent was killed instantly.

The record establishes the fact that the National Guard member, Private Keleher, was engaged, at the time of this fatal accident, in inactive duty training under 32 U.S.C. §502. That section reads as follows:

§ 502. Required drills and field exercises

(a) Under regulations to be prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, each company, battery, squadron, and detachment of the National Guard, unless excused by the Secretary concerned, shall—

(1) assemble for drill and instruction, including indoor target practice, at least 48 times each year; and

(2) participate in training at encampments, maneuvers, outdoor target practice, or other exercises, at least 15 days each year.

(b) An assembly for drill and instruction may consist of a single ordered formation of a company, battery, squadron, or detachment, or, when authorized by the Secretary concerned, a series of ordered formations of parts of those organizations. However, to have a series of formations credited as an assembly for drill and instruction, all parts of the unit must be included in the series within seven consecutive days of the same calendar month.

(c) The total attendance at the series of formations constituting an assembly shall be counted as the attendance at that assembly for the required period. No member may be counted more than once or receive credit for more than one required period of attendance, regardless of the number of formations that he attends during the series constituting the assembly for the required period.

(d) No organization may receive credit for an assembly for drill or indoor target practice unless—

(1) the number of members present equals or exceeds the minimum number prescribed by the President;

(2) the period of military duty or instruction for which a member is credited is at least one and one-half hours; and

(3) the training is of the type prescribed by the Secretary concerned.

(e) An appropriately rated member of the National Guard who performs an aerial flight under competent orders may receive credit for attending drill for the purposes of this section, if the flight prevented him from attending a regularly scheduled drill. Aug. 10, 1956, c. 1041, 70A Stat. 610.

This Court has consistently taken the position that whenever the National Guard is either called into active duty under Title 10, §263, or into active training under the above quoted §502, its members are on a "federal mission" and not performing a state function.

The National Guard is a reserve component of the Armed Forces of the United States (10 U.S.C. §261). It is

clear from a reading of Titles 10 and 32 of the U. S. Code that the mission of the National Guard, both on active duty (10 U.S.C. §263) and inactive training (10 U.S.C. §502, 503) is primarily a federal mission.

We commented at length on the employment status of the members of the Illinois National Guard in an Order entered April 27, 1971, dismissing the complaint in *Speer* vs. *State*, Court of Claims No. 5903. Said order, awaiting publication, was attached to respondent's brief with copy to the claimant.

In the *Speer* order we acknowledged that there are circumstances under which the National Guard may be called into service by the Governor when necessary for the performance of a state function. That was not the situation in the case before us.

Since the National Guard unit to which Private Keleher was attached was not engaged in the performance of a state function or in state service at the time of the fatal accident, he was not an agent nor an employee of the State of Illinois. Hence the state would not be responsible for his acts and claimant's cause of action is not within the jurisdiction of this Court.

We have not overlooked claimant's contention that proof of ownership of a motor vehicle raises the presumption that the person operating the motor vehicle was the agent of the owner and acting within the scope of his employment. However, the record indicates that the state did not own the National Guard truck involved in the accident. It bore serial number USA 41108473, and was a vehicle owned by the United States. Title 32, U.S.C. §710 states in part:

"All military property issued by the United States to the National Guard remains the property of the United States."***

It is thus apparent that any presumption of agency

arising out of ownership of the government vehicle would further tend to establish the fact that Private Keleher was an agent of the United States government and not an agent of the State of Illinois.

Obviously, the further question as to whether Private Keleher was acting within the scope of his employment at the time of the accident is not an issue properly before this Court since he was not then employed by the respondent.

We conclude, therefore, that the alleged tort feasor was not an agent of the State of Illinois at the time of the accident and that this claim against the respondent must be denied.

The claim is denied.